IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES WILLIAMS | : | CIVIL ACTION |
| | : | |
| v. | : | No. 11-4681 |
| | : | |
| JOHN E. WETZEL, Secretary, | : | **THIS IS A CAPITAL CASE** |
| Pennsylvania Department of Corrections, | : | |
| et al. | : | |

**MEMORANDUM**

**Juan R. Sánchez, C.J.**                                                                   **March 31, 2021**

      Petitioner James Williams has filed a motion for discovery in support of his pending petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Commonwealth opposes the motion. Because Williams has shown good cause for the limited discovery he seeks, the motion will be granted.

      In 2001, Williams was convicted of first-degree murder, robbery, and conspiracy to commit robbery in connection with the shooting death of Richard White during an attempted robbery. At trial, the Commonwealth presented testimony from four co-conspirators in the crime: Lamar Peterson, who told authorities of Williams's role in the robbery and murder following his and Williams's arrest for an unrelated bank robbery, and Luis Avila, Curtis French, and Ralph Logan, who corroborated Peterson's account. *See Commonwealth v. Williams*, 896 A.2d 523, 531 (Pa. 2006) (*Williams I*). The cooperators each received substantial benefits in exchange for their testimony. *See id.* at 540. Williams was sentenced to death.

      In his motion for discovery, Williams seeks an order directing the Commonwealth to produce prosecutor Maria Dantos's[1] notes "concerning interviews, witness preparation sessions,

---

[1] In 2007, Ms. Dantos became a judge on the Court of Common Pleas of Lehigh County, a position from which she has since retired.

and/or witness examination outlines with, for and/or concerning Commonwealth cooperating witnesses [Avila, Logan, Peterson, and French]." Mot. for Discovery Ex. 1. Williams seeks this information to help prove his claim that the prosecution violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by, *inter alia*, failing to provide him with impeachment evidence that key prosecution witnesses changed their stories during the course of preparing for trial.

Williams previously sought production of this material during the proceedings on his Post Conviction Relief Act (PCRA) petition. The PCRA court granted the request, but the Pennsylvania Supreme Court reversed. *See Commonwealth v. Williams*, 86 A.3d 771 (Pa. 2014) (*Williams II*). The PCRA court granted the discovery motion before the Commonwealth had an opportunity to respond and then denied the Commonwealth's request for reconsideration without issuing a written opinion. *See id.* at 775-76, 790. At the hearing on the reconsideration request, the PCRA court stated only that it was "concerned with whether or not there may be something that may be of value, which may be exculpatory, but it may not be." *Id.* at 790 (citation omitted). On appeal, the Commonwealth argued the order was erroneous because the materials sought were protected by the work product doctrine and because Williams had not established good cause for the disclosure under Pennsylvania Rule of Criminal Procedure 902(E)(2). The Supreme Court found the good cause issue determinative, holding the PCRA court had abused its discretion by ordering access to the notes "based on a purely speculative claim that there might be 'something' exculpatory to be found in them," without discussing the good cause standard under Rule 902(E)(2) or the work product doctrine. *Id.*

Williams now seeks disclosure of Dantos's notes in this federal habeas proceeding pursuant to Rule 6 of the Rules Governing Section 2254 Cases in the United States District Courts. Under that Rule, a judge may authorize a party in a federal habeas case to conduct discovery under the

Federal Rules of Civil Procedure "for good cause." Good cause exists "where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Bracy v. Gramley*, 520 U.S. 899, 908-09 (1997) (quoting *Harris v. Nelson*, 394 U.S. 286, 300 (1969)); *accord Lee v. Glunt*, 667 F.3d 397, 404 (3d Cir. 2012). Although Rule 6 "does not authorize fishing expeditions," *Williams v. Beard*, 637 F.3d 195, 211 (3d Cir. 2011) (citation omitted), a petitioner "need not show that the additional discovery would definitively lead to relief" to satisfy the good cause standard, *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000). Rather, the petitioner "need only show good cause that the evidence sought would lead to relevant evidence regarding his petition." *Id.*; *see also Johnston v. Love*, 165 F.R.D. 444, 445 (E.D. Pa. 1996) ("[A] court may not deny a habeas corpus petitioner's motion for leave to conduct discovery if there is a sound basis for concluding that the requested discovery might allow him to demonstrate that he has been confined illegally.").

Based on the submissions before this Court, the Court is persuaded Williams has satisfied the Rule 6 good cause standard here.[2] Williams has alleged that three of the four cooperating witnesses (Avila, Logan, and Peterson) admitted they lied in their initial statements. Mot. for

---

[2] The Commonwealth argues Williams's claim that Dantos's notes may contain evidence of inconsistent statements by the cooperating witnesses is speculative and was appropriately rejected by the Pennsylvania Supreme Court, noting that Williams has not demonstrated "that in rejecting his discovery request, the appellate court applied clearly established federal law erroneously." Resp. to Mot. for Discovery 14. Insofar as the Commonwealth suggests that review of Williams's discovery motion is governed by 28 U.S.C. § 2254(d), this argument is incorrect. Section 2254(d)(1) prohibits a federal court from granting habeas relief on any claim that was adjudicated on the merits in state court "unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law." But this provision "applies only to a 'substantive request for habeas relief.'" *Williams*, 637 F.3d at 211 n.14 (quoting *Fahy v. Horn*, 516 F.3d 169, 180 (3d Cir. 2008). It does not apply to discovery requests. *Id.* Moreover, the Pennsylvania Supreme Court's discovery ruling was based not on federal law but on Pennsylvania law, specifically the good cause requirement under Pennsylvania Rule of Criminal Procedure 902(E)(2).

3

Discovery ¶ 11. During her PCRA testimony, Dantos acknowledged that two of these witnesses (Avila and Logan) changed their stories during the course of their meetings with her prior to trial. Avila claimed to have told Dantos prior to trial that he fabricated his initial statement. *Id.* Although Dantos stated she did not recall specifically whether Avila told her that anything in his prior statement was false, she stated that Avila may have explained or added or changed details and circumstances of his statement over the course of her meetings with him. *Id.* ¶¶ 4-6, 8. As to Logan, Dantos testified that his original statement to police changed over the course of her meetings with him. *Id.* ¶ 9. Dantos also stated that it was not unusual for witness statements to "evolv[e]" and for additional information to come to light during the trial preparation process. *Id.* ¶¶ 4, 8. The Commonwealth notes that Dantos also testified that she was "comfortable that all discovery had been provided" and that "there was nothing exculpatory in the files." Resp. to Mot. for Discovery 13 (quoting *Williams II*, 86 A.3d at 790). Yet Dantos acknowledged that while she did not record any statements from any of the witnesses, she would likely have made a note to question Logan about the change in his testimony. *See* Mot. for Discovery ¶ 9. And the Commonwealth acknowledged before the PCRA court "that there were likely notes made in preparation of cross-examination and direct-examination of witnesses." *Williams II*, 86 A.3d at 790. Before the PCRA court, the Commonwealth took the position that the notes were protected by work product, *id.*, but it has not renewed its work product objection before this Court. Contrary to the Commonwealth's position, Williams's belief that Dantos's notes contain information regarding discrepancies between one or more of the cooperating witnesses' statements and what they told her during the trial preparation process is based on more than mere speculation.

   The Commonwealth also argues Williams has not shown good cause because he has not demonstrated that any withheld impeachment evidence was material such that he was prejudiced

4

by the nondisclosure. To prove his *Brady* claim, Williams will ultimately have to show that there is a reasonable probability that, had the withheld impeachment material been disclosed to the defense, the result of the proceedings would have been different. *Johnson v. Folino*, 705 F.3d 117, 128 (3d Cir. 2013). At this stage, however, Williams need only show that there is reason to believe that if the facts are fully developed, he may be able to demonstrate that he is entitled to relief. *Bracy*, 520 U.S. at 908-09. Avila, Logan, French, and Peterson were undoubtedly important witnesses at trial, corroborating each other's accounts of Williams's role in the robbery and shooting. *See Williams I*, 896 A.2d at 531; *cf. id.* (noting "the majority of the Commonwealth's witnesses were [Williams's] co-conspirators in numerous robberies"). Although the evidence against Williams was not limited the testimony of the co-conspirators and included, for example, evidence that Williams attempted to fabricate an alibi with the help of another inmate, the Court cannot say, at this juncture, that there is no reasonable probability that additional impeachment evidence regarding the "evolution" of the cooperating witnesses' stories could have made a difference. *See Johnston*, 165 F.R.D. at 448 (rejecting the argument that discovery regarding undisclosed impeachment material would be "purposeless" because any withheld evidence would not be material, where the possible existence of an additional category of undisclosed impeachment material would make the issue of prejudice a "more difficult question").

The Commonwealth also argues Williams's discovery request is foreclosed by *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011), in which the United States Supreme Court held that federal habeas review under 28 U.S.C. § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster* involved a petitioner who obtained federal habeas relief after receiving an evidentiary hearing in federal court. *See id.* at 179. The issue in the case was whether new evidence from the hearing could be considered by the federal court in

determining whether the state court's resolution of the claim was contrary to or involved an unreasonable application of federal law under § 2254(d)(1). *See id.* at 180. The Supreme Court held it could not, noting that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.* at 185.

The Commonwealth argues *Pinholster* forecloses Williams's discovery request because, to the extent that Williams's *Brady* claim is exhausted, the claim is subject to review under § 2254(d) based solely on the state court record, making any new information obtained in discovery irrelevant. Although the Third Circuit Court of Appeals has held that "[i]n light of *Pinholster*, district courts cannot conduct evidentiary hearings to supplement the existing state court record under 28 U.S.C. § 2254(d)," *Brown v. Wenerowicz*, 663 F.3d 619, 629 (3d Cir. 2011), as the Commonwealth acknowledges, the Court of Appeals has not addressed whether *Pinholster* also bars discovery in federal habeas proceedings.

Other federal courts are divided on this issue. Some courts have held that *Pinholster* bars discovery with respect to claims governed by § 2254(d)(1), at least until the petitioner has overcome the bar set by that provision based on the record before the state court. *See, e.g.*, *Keaton v. Folino*, No. 11-7225, 2018 WL 8584252, at *53 (E.D. Pa. Nov. 15, 2018) (holding that because new evidence would not be admissible on claims presented to the state courts, additional discovery regarding those claims was not warranted under *Pinholster*), *report and recommendation adopted by* 2019 WL 2525609 (E.D. Pa. June 19, 2019); *Wahid v. Asuncion*, No. 16-778, 2018 WL 6184769, at *2 (C.D. Cal. June 28, 2018) (denying petitioner's request to conduct discovery into a claim denied on the merits in state court because there was no reason to permit discovery aimed at gathering new evidence that could only be considered if petitioner first overcame the bar set by

§ 2254(d)); *accord Sears v. White*, No. 12-2066, 2013 WL 1209624, at *6 (E.D.N.C. Mar. 25, 2013). But other courts have rejected the argument that *Pinholster* bars discovery in these circumstances, particularly in capital habeas cases. *See, e.g.*, *Gibson v. Wetzel*, No. 11-4550, 2016 WL 1273626, at *2-4 (E.D. Pa. Mar. 31, 2016) (noting the "trend[] toward applying *Pinholster* to Rule 6 discovery but declining to follow it); *High v. Nevens*, No. 11-891, 2013 WL 1292694, at *4-6 (D. Nev. Mar. 29, 2013); *Pike v. Johnson*, No. 12-35, 2013 WL 2457718, at *3-4 (E.D. Tenn. June 6, 2013); *Quezada v. Brown*, No. 08-5088, 2011 WL 4975343, at *2 (E.D.N.Y. Oct. 19, 2011).

Upon review of the relevant authorities, the Court is not persuaded *Pinholster* bars discovery in this case. As numerous courts have recognized, *Pinholster* did not address discovery under Rule 6, much less hold "that a petitioner seeking leave for discovery under Rule 6(a) must anticipatorily demonstrate—over and above what the apposite Supreme Court authority in *Bracy* requires—that the discovery sought would not place his claims in 'violation' of *Pinholster*." *High*, 2013 WL 1292694, at *4; *see also Gibson*, 2016 WL 1273626, at *3 ("*Pinholster* 'did not, strictly speaking, alter or even speak to the standards governing [Rule 6] discovery.'" (alteration in original) (quoting *Conway v. Houlk*, No. 07-947, 2011 WL 2119373, at *3 (S.D. Ohio 2011)); *Quezada*, 2011 WL 4975343, at *2 (noting that *Pinholster* "does not mention discovery in the context of a habeas petition nor does it reference *Bracy* . . . or Rule 6"). Further, as courts in this district have recognized, whether the Court "ultimately consider[s] the evidence sought by Petitioner is separate from the question of whether he may obtain that evidence in discovery. . . . [I]t would not be appropriate to make a determination as to the ultimate merits of the petition at this stage when briefing has not yet been completed." Order 1 n.1, *Roney v. Wetzel*, No. 14-2083 (E.D. Pa. Aug. 5, 2015), ECF No. 33 (quoting Order ¶ 6, *Miller v. Beard*, No. 10-3469 (E.D. Pa.

Oct. 13, 2011), ECF No. 17). And waiting to permit discovery "only after it appears *Pinholster* would not bar consideration of new evidence" would only "add[] months of delay to the proceedings, a result that could be avoided by simply permitting discovery that otherwise appears to be warranted under Rule 6." *Gibson*, 2016 WL 1273626, at *3 (quoting *Conway*, 2011 WL 2119373, at *4).

It is also significant that Williams seeks discovery regarding a *Brady* claim because, as Williams notes, the discovery may be relevant not only to the merits of the claim but also to show cause and prejudice to the extent the Commonwealth argues the claim is defaulted (in which case *Pinholster* would not apply). *See Johnson*, 705 F.3d at 128 (noting the suppression and materiality elements of a *Brady* claim mirror the cause and prejudice requirements for overcoming a procedural default); Resp. to Mot. for Discovery 8 (arguing Williams's *Brady* claim is governed by § 2254(d) "[a]ssuming *arguendo* that petitioner's claims are in fact exhausted"). Indeed, the Court in *Pinholster* left open the possibility that new evidence of withheld exculpatory witness statements that support an adjudicated *Brady* claim might also present a new claim for which the petitioner could attempt to show cause and prejudice. *See* 563 U.S. at 186 n.10.

Finally, the Commonwealth suggests, in a footnote, that Williams's effort to obtain discovery is "effectively foreclosed" because he did not raise his *Brady* claims at trial or on direct appeal even though he knew, based on the witnesses' trial testimony that their stories had evolved. Resp. to Mot. for Discovery 16 n.2. This argument is based on the Pennsylvania Supreme Court's suggestion in its discovery decision that "to the extent that [Williams's] discovery argument [wa]s premised upon his speculation that the Commonwealth must have withheld pre-trial corroboration of the inconsistencies revealed at trial, his *Brady* claim ripened then." *Id.* (quoting *Williams II*, 86

A.3d at 791 n.10).  For purposes of this motion, it sufficient to note that Williams maintains his discovery motion is based on Dantos's PCRA testimony.  *See* Reply 7.

Because Williams has shown good cause for the limited discovery he seeks, the motion for discovery will be granted.  An appropriate order follows.

BY THE COURT:

　/s/ Juan R. Sánchez　
Juan R. Sánchez, C.J.