IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Clerk of Court                        October 30,2024
US Courthouse
601 Market Street
Philadelphia, PA.19106

                         WILLIAMS v.WETZEL,NO;11-4681 (E..D.PA)

James Williams
Fed# 31734-037
FDC-Philadelphia
700 Arch Street
Philadelphia,Pa.19105

    RE: POST-SUBMISSION COMUNICATION

Dear Honorable Judge Sanchez:

About October 30,2019, I formally filed an Pro Se Habeas Corpus motion asserting egregious prosecutorial and attorney misconducts, and constitution violations of BRADY v.MARYLAND,373 us 83 (1963) inter alia . That directly and knowingly caused my false charge, extradition and conviction. These serious misconducts,claims have been summarized by the trial court in it' March 10,2010 Order recusing itself from the case. See Enclosed MArch 10,2010 Order of Judge Reibman.

Since,this court held oral hearing regarding these aforemention claims and Habeas Corpus motion on December 20,2022. The parties have been awaiting this courts ruling. However, in the interim highly related and material exculpatory evidence germane to this courts greater understanding,insights into determining the habeas claims has transpired.[1]

        POST-SUBMISSION COMMUNICATION:
    BREAKING NEWS OF ATTORNEY MISCONDUCT
    ─────────────────────────────────────

Recently,the Pennsylvania Supreme Court Disciplinary Board suspended a Philadelphia lawyer from legal profession for gross misconduct. In filing a civil action in court on behalf of a individual- without the individuals authorization or permission. See Enclosed Philadelphia Inquire Daily Newsarticle,10/2/24 at page 2 ("id. Lawyer suspended

---

[1] Particularly, one of the pending Habeas claims alleged gross attorney misconduct. In which,forced appointed attorney improperly filed a Direct Appeal action to the Pennsylvania Supreme court without permission from Pro Se defendant. See Enclosed Commonwealth v.Williams, 196 A.3d 1021,1025-26 (Pa.2018)( "on June 4,2003 Appellant asserted standby acted without authority by filing a brief")

for Misconduct.Pennsylvania's Legal Disciplinary Board suspended a Philadelphia Lawyer after he attempted to file a civil lawsuit without his permision. Misconduct J.Corcoran esq, admits was unethical---.")

## EXCULPATORY EVIDENCE MATERIAL

The Pennsylvania Supreme Court' (hereafter "PSC") actions id. admonishing attorney (for filing documentation in court without permission) as unethical and gross misconduct is identical to the actions Daniel Silverman,esq,admitted committing against me. Compare enclosed Declaration of Silverman,executed February 17, 2010,pursuant to 28 usc 1746.

Specifically, the pertinent part reads:

> (id."9. When filing the brief in this case,I signed Mr. Williams name, noting by symbol,that it was not his signature. [I included Mr.Williams' name without his permission]. [I did not check with him before I signed his name and I did not get his permission---"]).

Although,identical to the attorney' misconduct found unethical by ("PSC") in recent breaking news decision supra. Silverman' misconduct commited against me was far worse and more detrimental.[2]

Second,consider fact that Silverman' misconduct was far more irreparable,injurious than merely being ineffective in a case. Silverman' misconduct was unethical and willful. An attorney engaging in unethical misconduct in the criminal justice system creats manifest injustice,is criminal behavior in itself and causes harm to the trust and public perception of the justice system. As acknowledged by ("PSC") and attorney Corcoran,esq. See enclosed Philadelphia Daily newsarticle,10/2/24 at page 2 (id."an attorney's unethical msiconduct causes harm to the trust and perception of justice in the criminal system---."); see also US v.Johnson No.20-1449(3d Cir 2021)(prosecutor' found similar attorney misconduct to be criminal warranting the attorney' charge,arrest and conviction).

Third, Silverman' misconduct warrants severest discipline,deterence and sanction as well as immediate dismissal of the charges or alternatively a speedy new trial.

---

[2] Silverman'fraud/forgery misconduct (as admitted in case subjudice) resulted in irreparably blocking movant from obtaining redress/ vacation of his wrongful conviction 21 years ago. Silverman acknowledges that his unethical misconduct was willful. As Silverman willfully excluded and prevented movant from receiving any fair, full judicial review of multiple meritorious BRADY(1963) violations and prosecutorial misconduct claims movant attempted to raise 21 years ago. See Silverman' Declaration at paragraph 7 ( acknowledging thwarting movants diligent attempts to raise BRADY violation and prosecutorial error claims 21 years ago). Silverman' misconduct although comparative was far more pernicious.

See US v. BEGGERLY,524 us 38,46 (1998)( new trial must be granted where there is an obvious injustice. One such ground is misconduct), (id.To qualify under this category. A movant must establish by clear, convincing evidence the party engaged in fraud or other misconduct).

Clearly, forgery ie an filing of documentation in court using some one else's name,signature,without permission (as admittedly occured in this case) squarely fits the qualification of fraud or other attorney misconduct.

## A COMPLETE FARCE,MOCKERY AND MISCARRIAGE OF JUSTICE

Silverman' gross unethical misconduct has created a obvious and manifest injustice. Instead of preventing injustices ,wrongful convictions the attorney (Silverman' misconduct) directly contributed to making a complete farce,mockery and miscarriage of justice of these Pennsylvania criminal justice proceedings.

The injustice is manifest and displayed obviously in the ("PSC") 2018 published opinion.An published opinion the ("PSC") and Silverman both knew or should have known was a complete mockery of justice and farce (false). See eg, enclosed Commonwealth v. Williams,196 A.3d 1021,1025-1026 (Pa.2018).

Specifically,the following pertinent portions of the ("PSC") opinion id. both ("PSC") and Silverman knew was false as follows:

(id.1025, "On April 9,2003,standby counsel (on behalf) of appellant,filed appellants brief..." [ On June 4,2003,appellant filed an application for relief entitled motion to file "Emergency Appeal" Therein.appellant asserted that standby counsel was acting without his authorization by filing a brief that failed to contain various issues he wished].

[On September 17,2003, standby counsel,by letter in lieu of supplemental brief indicated appellant would rely on the brief filed on April 9,2003].

On November 16,2005,we issued a per curiam order denying appellants application. This court affirmed the judgement,sentence on April 21,2006. Williams 896 A.2d at 548.)

It is without doubt the ("PSC"),Silverman each knew that the opinion was a farce,mockery and that the attorney had indeed acted unethical and filed the brief on (April 9.2003) without authority,permission and forged movants signature. Simply, because movant/appellant had filed ("two") emergency pro se notifications to the ("PSC") quickly alerting ("PSC") "twice" of the attorney's nefarious forgery and fraudulent misconduct.

AS ("PSC") recently in it' own opinion could not help but recount saying: (id.1025-1026, "On June 27,2005 appellant filed an application. Therein,appellant raised the same allegations as in his June 4,2003 motion. That standby counsel unwanted in the first place,replaced appellants original issues with his own frivolous, specious issues anbd forged appellants signature to the brief"). (emphasis added).

Additional,evidence clearly showing ("PSC") knew it's cite as 196 A.3d at 1025 (PA.2018) supra was a complete mockery,farce (knowingly false). Because in the February 17,2010,declaration Silverman described in details how he indeed forged movant signature including filed the frivolous court brief without permission.See Silverman Declaration (id.at 7,9-10).[3]

In summary,rather than deal squarely,fairly with movant case or correct an obvious injustice (travesty) ie manifest unethical misconduct,forgery by an attorney.See Commonwealth v.Williams,196 A.3d at 1025-1026 (Pa,2018) supra. Instead,the ("PSC") harnessed the injustice,embodied the unethical behavior,casually and recklessly relying upon the attorney' false statement in it' published opinion cited as 196 A.3d at 1025 to deny relief id.

Despite,knowing full well that the attorney' statement in the opinion id. at 1025 was unethical/fabricated and that the attorney had filed the frivolous court document (brief) without permission or agency and forged movant/appellants signature. Because,movant/appellant had (twice) and quickly alerted ("PSC") of the attorney' trick,forgery misconduct. See Commonwealth v. Williams,196 A.3d at 1025-26 (Pa.2018) supra. And a third time Silverman himself confessed explicitly to filing the frivolous brief without permission and forging movant/appellant' signature in February 17,2010. See Silverman declaration (id.7,9-10) supra.

The ("PSC") had a constitutional duty to correct the known false statement in it' opinion cite as 196 A.3d at 1025-1026 (Pa.2018) supra. see NAPUE v.ILLINOIS,360 us 264(1959). Furthermore,the ("PSC") abrogated it' duty to investigate and not countenance attorney misconduct). The ("PSC") repeated failure to correct false statements in it' opinion is showing flagrant indifference and disregard for the truth and created a complete mockery and miscarriage of justice.

## DELIBERATE OMISSION OF EXCULPATORY EVIDENCE AND COVER UP BY ("PSC")

As shown,the ("PSC") did not correct or investigate manifest unethical attorney misconduct brought to it' attention supra and instead unconscionably covered it up.As clearly obvious by ("PSC") complete omission of the attorney' February 17,2010 declaration (accepting responsibility for forging the frivolous document and filing it in court without permission) from being referenced at any point in its opinion cite at 196 A.3d at 1025-1026(Pa.2018) supra. Thus,making a complete mockery and miscarriage of justice out of the entire Pennsylvania criminal justice system.

---

[3] see also enclosed Silverman,esq,June 2011,in court testimoy acknowledging that each of the issues he filed (without permission) was found entirely frivolous by ("PSC").PCRA testimony at Page 33-34.

CONCLUSION

The attorney misconduct combined with the pattern of prosecutorial misconduct committed in this case(as summarized in the trial judge March 10,2010 recusal order enclosed)caused a complete travesty and miscarriage of justice. Just consider the herein attorney misconduct in this case was willful.see Silverman Declaration (id.at 7,9-10) supra.see also Commonwealth v.Williams 196 A.3d at 1025-1026 (Pa.2018) supra.. Then the foul strike and insult to the injustice by the ("PSC") deliberately covering up the attorney' gross misconduct. As the ("PSC") published opinion cite as 196 A.3d at 10125-1026 (Pa.2018) clearly demonstrates by it's conspicuous omission of any,all mention on the exculpatory 2010 Silverman Declaration.

The ("PSC") deliberately omitted the exculpatory Silverman 2010 confession (Affidavit) see also fn.3 despite Silverman' misconduct being far worse than what ("PSC") found unethical in Corcoran,esq, and criminal in Us v Johnson (3rd 2021) supra. Compare Commonwealth v.Williams 196 A.3d at 1025-1026 (Pa.2018) supra, But see Silverman Declaration (id. at 7,9-10) supra and Philadelphia Dailynewsarticle 10/2/24 at page 9.

RELIEF

Movant seeks immediate vacation of wrongful conviction and dismissal of case with prejudice. Where movant can show willful misconduct dismissal is proper. See V.I. v. Fahie,419 249,253 (3d 2005) (dismissal of case with prejudice is proper relief in cases of deliberate or evidence of willful misconduct)(id. the most severest sanctions provided by rule must be available to the districtcourt in appropriate cases).

In alternative movant seeks expedited and emergency hearing with the District court to clarify any questions that the court may have that the post submission and enclosed attachments fail to address.  see US v.YOUNG,470 us 1,15(1985)(obvious injustice must be promptly redressed).

Sincerely,

James Witt

10/2/24 pg.9

# NEWS | COURTS

# Philly lawyer suspended for misconduct

**By Ellie Rushing**
*Staff Writer*

Pennsylvania's legal disciplinary board has suspended a Philadelphia lawyer for 18 months after he attempted to file a civil lawsuit on behalf of the father of T.J. Siderio, the 12-year-old who was shot and killed by police in 2022, without his permission — misconduct he acknowledged was driven by his desire for potentially high attorney's fees on the case.

J. Conor Corcoran, 47, admitted that his actions were unethical, and agreed with the Disciplinary Board of the Supreme Court of Pennsylvania that he should not be allowed to practice law for 18 months, according to the board's order, released Monday. He accepted "full responsibility for his misconduct and is remorseful," the order said.

suit on behalf of Thomas Siderio Sr., whose son was shot and killed by Officer Edsaul Mendoza in March 2022. Corcoran had represented Siderio in two civil cases against the city about eight years ago — both involving separate injuries Siderio said he suffered at the hands of Philadelphia police and prisons officers.

Because of this, he assumed he would represent Siderio again, said Corcoran's lawyer, Samuel Stretton.

Siderio had been in and out of jail for much of his son's life, and at the time of his death, was serving a six-to-12-year prison sentence tied to an illegal gun possession conviction connected to a fatal shooting.

Just two days after T.J. was killed, Corcoran, who hadn't been in contact with Siderio in years, filed a writ of summons attempting to have Siderio named as administrator of his son's estate about the matter, according to the order. He sent Siderio a contingency fee agreement the following month asking for an attorney's fee of 25% of any funds recovered, but the father never signed it.

Other attorneys also vied to represent Siderio and his family, offering lesser attorney's fees, according to the order.

"There's multiple lawyers who want this case. 1 lawyer just of fered me 20%. ... If you can beat 20% let my dad know," Siderio told Corcoran, according to the filings.

Corcoran then sent letters to the competitors, including Shaka Johnson, telling them to cease and desist and threatening to file complaints against them. Siderio ended up hiring attorneys at Clearfield and Kofsky to represent him. T.J.'s mother, Desirae Frame, hired the firm Saltz Mongeluzzi Bendesky. They filed a lawsuit against the city earlier

Still, Corcoran continued to claim he represented Siderio, and in June, he filed a petition in Philadelphia's Orphans' Court asking a judge to find Siderio incapacitated and to appoint a guardian to oversee his estate and civil cases. The disciplinary board said Corcoran lied about Siderio's mental troubles, and attached his medical records without his consent.

He also requested that Siderio and Frames' attorneys be removed from the case.

"That was a terrible mistake," said Stretton, Corcoran's lawyer.

A judge dismissed both requests. Corcoran ultimately withdrew his civil action in July 2022 and acknowledged the family was being represented by other lawyers.

Corcoran acknowledged in the filing that his behavior was unethical and "caused harm to the public's trust and perception of

to the suspension order. Corcoran "got carried away because of the magnitude of the potential attorney's fees that could be garnered" through the suit, the order said.

His conduct was not characteristic of his 22 years practicing law and he has no prior disciplinary history, the order said. He is remorseful and regretful. The suspension begins Oct. 30, and he will be able to begin reapplying for his legal license in 10 months, Stretton said.

"He's a good lawyer otherwise, and he'll come back someday and do a good job again," he said.

As Stretton sees it, many attorneys involved acted poorly, driven by what has become a growing issue undermining the legal profession.

"Greed," he said.

✉ erushing@inquirer.com
🐦 EllieRushing

## DECLARATION OF DANIEL SILVERMAN, ESQ., PURSUANT TO 28 U.S.C. § 1746 AND 18 Pa. C.S. § 4904

I, Daniel Silverman, Esq., do hereby declare and verify as follows:

1. My name is Daniel Silverman. I am an attorney admitted to practice in the Commonwealth of Pennsylvania. I was appointed to serve as stand-by appellate counsel for James Williams on direct appeal of his capital conviction and death sentence to the Pennsylvania Supreme Court. Mr. Williams was representing himself in that appeal.

2. In capital cases, it is my practice to raise any arguably meritorious issue that I find in my review of the record. Although I had been appointed as stand by counsel, I treated Mr. Williams's appeal in much the same way as I would if I had been directly representing him. I reviewed the entire record of the case and developed potential appellate issues that I thought had some possible merit. It was my belief that given my experience as an appellate lawyer, I could do a better job of spotting, developing, and raising issues than would Mr. Williams.

3. During the course of my duties, Mr. Williams was incarcerated in the United States Penitentiary in Florence, Colorado. I did not meet with Mr. Williams in person or speak with him on the phone. All of our communication was through letters in the mail. This made discussion of the issues and agreement on strategy difficult. I considered asking the Court for funds to allow me to travel to Colorado and meet with Mr. Williams, but given my busy schedule, the posture of the case, and doubts as to whether the Court would grant such funds, I never did so.

4. After reviewing the record, I sent Mr. Williams a list of issues that I thought should be contained in his appeal. Mr. Williams informed me that he had a number of claims

1

Pennsylvania Supreme Court granted these motions. Rather than conduct a hearing in this matter, I was able to obtain the agreement of the Court and the prosecutor to allow the materials to be included in the record. Thus, no hearing was held. However, I did this without the consent of, or absent consultation with, Mr. Williams, and I did not seek his input into any of the proceedings on remand.

9. When filing the appellate brief in this case, I signed my name. I also signed Mr. Williams name, noting, by use of a symbol, that it was not his original signature. I included Mr. Williams' name without his permission because I felt it was necessary for the filing. I thought he would approve of the brief since I had included his IAD/Rule 1100 issue but I did not check with him before I signed his name and I did not get his permission. I learned later that I had been wrong, and that Mr. Williams did not approve of the Brief. I suggested to Mr. Williams that he ask the Pennsylvania Supreme Court to be allowed to supplement the Brief with the additional issues he wished to raise, but I did not take any other steps to assist Mr. Williams in having his desired issues heard.

10. In this case, I treated Mr. Williams as if he were my client, rather than as someone representing himself. I felt that it was in Mr. Williams' interest for me to take control of the appeal and prepare it as best I saw fit. Other then the IAD issue, I did not put much, if any, effort into helping Mr. Williams raise the issues of greatest concern to him in the most persuasive way possible, and ensuring that those issues could be heard and decided by the Pennsylvania Supreme Court.

3

three times with a MAC 10 automatic weapon. White died from his wounds. Appellant represented himself during his trial and sentencing proceedings, which were presided over by Judge Edward Reibman. Judge Reibman appointed standby counsel.[2] A jury convicted Appellant of first-degree murder, robbery, and conspiracy to commit robbery.[3] Thereafter, Appellant was sentenced to death. On appeal, Appellant again proceeded pro se with access to new standby counsel. A more detailed account of the factual and procedural history of this stage of the case is provided in our 2006 opinion. *See Commonwealth v. Williams*, 586 Pa. 553, 896 A.2d 523, 530-32 (2006), *cert. denied*, 549 U.S. 1213, 127 S.Ct. 1253, 167 L.Ed.2d 88 (2007) (*Williams I*).

On direct appeal, standby counsel, on behalf of Appellant, filed several procedural applications with this Court during the pendency of the appeal. In addition to four requests for extension of time to file a brief, which we granted, standby counsel filed an application for remand to the trial court to prepare a supplemental opinion; an application for remand to the trial court to supplement the certified record; a motion for funds and/or remand to retain the services of mitigation and psychological experts; a motion for remand to supplement the certified record with affidavits of witnesses; and a motion for remand to supplement the certified record with an affidavit of standby counsel. On April 9, 2003, standby counsel, on behalf of Appellant, filed Appellant's brief, raising eighteen allegations of error in the pre-trial, trial and penalty phases of the trial court proceedings.

On April 29, 2003, this Court issued a series of per curiam orders which granted remand for standby counsel to file a statement of matters complained of on appeal with the trial court and for that court to prepare a supplemental opinion; granted remand to supplement the certified record; granted remand for the trial court to consider Appellant's request to supplement the certified record with witness statements regarding any grant of immunity or bail arrangements; granted remand for the trial court to consider Appellant's request to supplement the certified record with standby counsel's affidavit regarding criminal records of Commonwealth witnesses; and denied Appellant's motion for funds and/or remand to secure an expert relative to Appellant's competency.

On June 4, 2003, Appellant filed an application for relief entitled "Motion to File an Emergency Amended Pro Se Appeal." Therein, Appellant asserted that standby counsel was acting without his authorization by filing a brief that failed to contain various issues he wished to include. On August 12, 2003, this Court tolled the briefing schedule pending filing of the trial court's opinion. On September 17, 2003, standby counsel, by "Letter in Lieu of Supplemental Brief," indicated Appellant would rely on the brief filed on April 9, 2003. On December 23, 2003, this Court issued a per curiam order denying Appellant's June 4, 2003 application for relief. On June 27, 2005, Appellant filed an application for leave to file post-submission communication. Therein, Appellant raised the same allegations as in his June 4, 2003 motion. Specifically, he alleged that "[i]nstead of presenting [A]ppellant's relevant issues as promised, this 'stand-by counsel'

---

2. The Commonwealth was represented by then Assistant District Attorney (ADA) Maria L. Dantos. In 2007, ADA Dantos was appointed to fill a vacancy on the Court of Common Pleas of Lehigh County and subsequently elected to a full term.

3. 18 Pa.C.S. §§ 2502(a), 37(a)(1); and 903(a)(1) & (2), respectively.

1    A.  January 9th, 2003.

2    Q.  Do you recall when your brief was filed?

3    A.  I have no idea. I'd be happy to accept your representation if --

5    Q.  Okay, if the Supreme Court docket sheet said that it was filed April 9th, 2003, would that sound correct?

7    A.  I accept your representation.

8    Q.  And now, you indicated on direct appeal that -- on direct, that the defendant had sent you a letter of some of the issues that he wanted raised. You said you had difficulty reading some of it?

12   A.  There's two questions. Mr. Williams sent me a series of letters over the time that I was involved in the case requesting/insisting that certain claims be raised.

16   Q.  And you admit you didn't include some of those claims in the brief that you filed?

18   A.  That's correct.

19   Q.  Why didn't you include those claims?

20   A.  Well, partly because I misunderstood my role as standby counsel, as I previously testified, and partly because I personally didn't think they had merit.

23   Q.  And that was based on your experience as an appellate counsel at the time?

25   A.  Yes.

IN THE COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA,

          Respondent,

v.

JAMES WILLIAMS,

          Petitioner.

Case No. 1996-3716
(Hon. Edward D. Reibman)

### ORDER

AND NOW, this 10 of March, 2010, the undersigned hereby recuses himself from further proceedings in the above-captioned matter for reasons stated in the footnoted opinion below.

IT IS FURTHER ORDERED that the evidentiary hearing scheduled to begin on March 22, 2010, is continued until further notice.[1]

---

[1] Petitioner, James Williams (Williams), has filed a petition for relief pursuant to Pennsylvania's Post Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541 et seq., seeking relief from a conviction of first degree murder and related charges and a sentence of death. An evidentiary hearing on Williams' petition is scheduled for March 22, 2010.

During Williams' trial in 2001, Maria Dantos was the lead prosecutor for the Commonwealth. Ms. Dantos currently presides as a fellow judge on the Lehigh County Court of Common Pleas. In his petition, Williams asserts numerous allegations of prosecutorial misconduct, alleging, inter alia, that now-Judge Dantos, while the prosecutor, engaged in a "conspiracy" with witness Louis Washington to "set up" Petitioner, withheld exculpatory and impeaching evidence in violation of Brady v. Maryland, 373 US 83 (1963), elicited false testimony from the Commonwealth's witnesses, relied on a false statement in securing Williams' arrest warrant, and made false statements in open court. Williams further contends that Judge Dantos committed these violations knowingly.

Pa.R.Crim.P. 903(B) provides "The trial judge, if available, shall proceed with and dispose of the petition [for post-conviction relief] in accordance with these rules, unless the judge determines, in the interests of justice, that he or she should be disqualified." (emphasis added). Here, the interests of justice require recusal. In adjudicating Williams' petition, the court would have no choice but to determine Judge

BY THE COURT:

~~[signature]~~

EDWARD D. REIBMAN, J.

issue. Since the judicial role must be filled by one whose partiality cannot be reasonably questioned, I cannot continue in this case."

Id. at 528.

Although Judge Dantos is obviously not "threatened by embroilment in a criminal prosecution", Williams' allegations clearly question Judge Dantos' reputation. In addition, at least one court has relied on Gordon as requiring recusal when a trial judge must determine the credibility of a colleague. In Shaw Group, Inc. v. Next Factors, Inc., 2006 WL 2356033 (Bankr.D.Del. Aug. 15, 2006), following a discussion of Gordon, the trial judge recused himself when the deposition of a judge on the same court was to be used as testimony during a bench trial. Id. at *1-2. In so ruling, the trial judge noted that "[t]he matter before me is the subject of a bench trial and the judge will be a finder of fact, including witness credibility." Id. at *1. Indeed, an essential characteristic of the present case is that the court will be the finder of fact. In Jordan v. Fox, Rothschild, O'Brien & Frankel, 1995 WL 141465 (E.D.Pa. Mar. 30, 1995), the court denied a motion for recusal where a fellow judge could have potentially been called as a witness in a civil *jury* trial. In denying the motion, the court noted "In deciding a motion for summary judgment or presiding at a jury trial, however, a judge does not weigh the testimony or pass upon the credibility of any witness." Id. at *2. The court continued, stating, "Nevertheless, the court will recuse itself from deciding any motion which may be made to join Judge Robreno and will recuse itself entirely should Judge Robreno become a party." Id.

The reasoning behind Gordon, Shaw Group, and Jordan is amplified by the fact that the present matter is a death penalty case. For the public to have any confidence at all in the ultimate resolution of this death penalty case, not only must the process be fair and impartial in fact, but it must also *appear* fair and impartial. While the court has no doubt as to its ability to adjudicate the case impartially, the court's continued involvement fails to create the necessary *appearance* of impartiality. Accordingly, the undersigned hereby recuses himself, and will refer the matter to the President Judge of the Lehigh County Court of Common Pleas with the request that the matter be assigned to a judge whose impartiality, under the circumstances presented here, might not be reasonably questioned. Due to this recusal, the scheduled March 22, 2010 evidentiary hearing is continued pending the assignment of another judge in order to give him/her an opportunity to review the matter and make any rulings or scheduling decisions he/she deems appropriate.

3

