**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JAMES WILLIAMS, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 11-4681 |
| JOHN E. WETZEL, Secretary, | : | |
| Pennsylvania Department of | : | **THIS IS A CAPITAL CASE** |
| Corrections, et al. | : | |

**SUPPLEMENTAL MEMORANDUM ADDRESSING THE**
**RECENT U.S. SUPREME COURT DECISION IN *GLOSSIP v. OKLAHOMA***

This capital habeas proceeding is pending before this Court.  It has been fully briefed and argued and is awaiting this Court's decision.  Petitioner James Williams files this supplemental memorandum addressing the Supreme Court's recent decision in *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025), in hopes of assisting this Court in reaching a speedy resolution of this case by granting Petitioner a new trial.

The claims in Section I of Petitioner's Habeas Petition and Supplement explain how Mr. Williams' due process rights were violated during Petitioner's capital trial because of the prosecution's suppression of exculpatory evidence and its knowing failure to correct false testimony in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and *Napue v. Illinois*, 360 U.S. 264 (1959)*.*  The U.S. Supreme Court's recent decision in *Glossip v. Oklahoma*, 145 S. Ct. 612 (2025), underscores Petitioner's right to relief under these claims.

In *Glossip*, the Supreme Court held that the petitioner was entitled to a new trial because the prosecution had failed to correct false testimony given by its key cooperating witness. *Glossip* supports Petitioner's request for a new trial.

In *Glossip*, the United States Supreme Court considered a claim that the prosecution presented false evidence or allowed false evidence to stand uncorrected in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). Mr. Glossip was convicted of murder based on the testimony of a cooperating co-defendant, Justin Sneed. Post-conviction prosecutorial disclosures indicated that Sneed lied at trial when he denied having been treated by a psychiatrist for bipolar disorder and prescribed lithium for a mental disorder. *Glossip*, 145 S. Ct at 627.

The Court found that the evidence supported the inference that the prosecutor knew that Sneed's testimony was false because the prosecution "almost certainly had access to Sneed's medical file." *Id.*  The prosecution knew that Sneed had previously been treated with lithium, a drug prescribed to treat mood disorders.  This knowledge was enough to require the prosecutor to correct the witness's false testimony.  *Id.*

The Court rejected the argument that the materiality threshold could not be met where Sneed was cross-examined about "so much other impeaching evidence." *Id*. at 628-29. The Court explained that, at trial, "the prosecution urged the jury to believe just the opposite; that despite his prior dishonesty and violence, Sneed was now telling the truth." *Id*. at 629.  Because Sneed's credibility was central to the prosecution's case, the jury must have accepted those arguments. But materiality analysis "asks what a reasonable decisionmaker would have done with the new evidence," and may not "assume the jury would have believed Sneed no matter what." *Id*.

The Court explained that materiality analysis under *Napue* must consider what would have happened "[h]ad the prosecution corrected [the false testimony] on the stand."  *Id.* at 268. The Court emphasized:

> [Such a] correction would have revealed to the jury not just that Sneed was untrustworthy . . . , but also that Sneed was willing to lie to them under oath. Such a revelation would be significant in any case, and was especially so here where Sneed was already nobody's idea of a strong witness. Even if Sneed's bipolar

> disorder were wholly irrelevant, as *amicus* argues, his willingness to lie about it to
> the jury was not. A lie is a lie, no matter what its subject.

*Id*. (internal parenthetical, quotations, and citations omitted).

The Court recognized that "prejudice analysis requires a 'cumulative evaluation' of all the evidence, whether or not that evidence is before the Court in the form of an independent claim for relief." *Id.* at 629 (quoting *Kyles v. Whitley*, 514 U.S. 419, 441 (1995)). The Court thus considered materiality of the false testimony in light of the prosecution's suppression of additional evidence, its destruction of certain evidence, and its violation of a sequestration order. *Id*.

Finally, the Court rejected the state court ruling that the defense "was aware or should have been aware that Sneed was taking lithium." *Id.* The Supreme Court found that any knowledge the defense had or could have obtained did not relieve the prosecutor of the obligation to correct false testimony. "[T]he Due Process Clause imposes 'the responsibility and duty to correct' false testimony on 'the representatives of the State,' not on defense counsel." *Id.* at 630 (quoting *Napue*, 360 U.S. at 269–70).

*Glossip* strongly supports Mr. Williams' claim for relief for due process violations during his capital trial. In *Glossip*, the Supreme Court determined that there was a material *Napue* violation based on one violation. In Petitioner's case there were numerous *Napue* and *Brady* violations. The case for relief in Petitioner's case is far stronger than the case for relief in *Glossip*.

Here, the prosecutor hid letters written by jailhouse informant Louis Washington showing that the prosecutor and he conspired to make Petitioner look like a liar and a fool. While it was Petitioner who called Washington as a witness, Washington turned on him, as part of his plan with the prosecutor, and gave damaging testimony that he was only testifying because Petitioner

3

had threatened him.  Washington falsely claimed that Petitioner tried to get Washington's mother

to be an alibi witness.  His testimony then led to rebuttal testimony from State Trooper Regina

Stafford who had posed as Washington's mother during a conversation with Petitioner.  Stafford

was someone the trial prosecutor said she would not have called as a witness if Petitioner had not

called Washington.   Contrary to what the hidden letters make plain, Washington lied on the

stand when he said he had no plan to testify against Petitioner.  The trial prosecutor knew his

testimony was untrue.  And, while the prosecutor, Ms. Dantos, said she did not know

Washington was going to testify, at Washington's sentencing a few months before Petitioner's

trial, she said she was planning to use his information at Petitioner's trial.

Additionally, the prosecution hid immunity deals with the two key murder suspects,

Curtis French and Lamar Peterson, who testified against Petitioner.  The state court prosecutor

admitted feeling "obligated" to acquiesce in promises that the FBI earlier gave these witnesses

during a concurrent bank robbery investigation – that the witnesses would never be charged for

the murder.  Despite the witnesses' indisputable roles in the crime, they were indeed given

immunity.  Incredibly, the witnesses testified at trial that they had no expectation of a reward and

no promises were made.  The trial prosecutor knew that was untrue.[1]

The uncorrected testimony left the jury with lies on significant matters of witness

credibility, including immunity and why they were called to testify.  If the witnesses had been

corrected it "would have revealed to the jury not just that [they were] untrustworthy . . . , but also

that [they were] willing to lie to them under oath."  Their "willingness to lie . . . to the jury was

---

[1] Petitioner's capital case sets out additional *Brady* violations including the fact that the trial prosecutor knew that murder suspect Ralph Logan was lying when he told the police he did not hit the victim with a gun.  The prosecutor did not produce a statement containing that information.

relevant" because "[a] lie is a lie, no matter what its subject."  The lies here go far beyond the lie about mental health treatment in *Glossip*.  In this case, the lies go directly to the witnesses' motivations to testify and desire to curry favor with the prosecutors.  As in *Glossip*, revelation of the lies would have been significant. And, under *Glossip*, the impact of the false testimony on the jury must be viewed along with all of the trial and *Brady* errors detailed in the Petition and the Supplement.

This Court reaches the merits of these allegations without AEDPA because the Pennsylvania Supreme Court never reached the merits.  Instead, it wrongly determined, against all the evidence, that Petitioner acquiesced in the representation of Daniel Silverman on direct appeal when it is undisputed that Petitioner was proceeding pro se and he protested Mr. Silverman's hijacking the appeal.  These arguments are developed in detail in Mr. Williams' Memorandum of Law.  Dkt. No. 43.

A new trial is required.   Petitioner respectfully requests this Court to promptly decide the pending habeas petition and grant him relief.

<div style="margin-left:40%">

Respectfully submitted,

*s/ Samuel J.B. Angell*
SAMUEL J.B. ANGELL
STUART B. LEV
Assistant Federal Defenders
Federal Community Defender Office
  for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545W
Philadelphia, PA 19106
(215) 928-0520

*Counsel for Petitioner James Williams*

</div>

Dated: April 29, 2025

## CERTIFICATE OF SERVICE

I, Samuel J.B. Angell, hereby certify that on this date I caused the foregoing document to

be served on the following persons via this Court's ECF Filing System:

Dep. Dist. Attorney Christine Murphy
Office of the Lehigh County District Attorney
Lehigh County Courthouse 455 West Hamilton Street
Allentown, PA 18101

*Samuel J.B. Angell*
Samuel J.B. Angell

Dated:  April 29, 2025